Trent M. Gardner (I.D. # 7477)
Jeffrey J. Tierney (I.D. # 12989)
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580
Phone: (406) 587-0618
Fax: (406) 587-5144
Email: tgardner@goetzlawfirm.com
        jtierney@goetzlawfirm.com

Joseph V. Womack (I.D. # 2641)
**WALLER & WOMACK, P.C.**
Suite 805 First Bank Building
303 North Broadway
Billings, Montana 59101
Telephone: (406) 252-7200
Facsimile: (406) 252-4266
Email: jwomack@jvwlaw.com

Attorneys for Joseph V. Womack, Trustee

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **JOHN HENRY SCHNEIDER,** | Case No. 14-61357 |
| Debtor. | |
| **JOSEPH V. WOMACK, AS CHAPTER 7 TRUSTEE OF THE ESTATE OF JOHN HENRY SCHNEIDER,** | Adversary No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| **SCHNEIDER LIMITED PARTNERSHIP; SCHNEIDER MANAGEMENT, LLC; MEDPORT, LLC; BSC, LLC; JOHN HENRY SCHNEIDER; MICHELLE R.** | |

SCHNEIDER; KATHLEEN T.
BURROWS; MICHELLE R.
SCHNEIDER, AS TRUSTEE OF THE
BRANDON SCHNEIDER BENEFIT
TRUST, DATED MARCH 30, 2012;
MICHELLE R. SCHNEIDER, AS
TRUSTEE OF THE SHANNON
SCHNEIDER BENEFIT TRUST,
DATED MARCH 30, 2012; MICHELLE
R. SCHNEIDER, AS TRUSTEE OF THE
CAITLIN SCHNEIDER BENEFIT
TRUST, DATED MARCH 30, 2012;
JOHN SCHNEIDER, AS TRUSTEE OF
THE JOHN SCHNEIDER REVOCABLE
TRUST, DATED NOVEMBER 20, 2007;
MICHELLE R. SCHNEIDER, AS
TRUSTEE OF THE MICHELLE
SCHNEIDER REVOCABLE TRUST,
DATED NOVEMBER 20, 2007; JOHN
DOES 1–10; and XYZ CORPS. 1–10;

Defendants.

Joseph V. Womack, Chapter 7 Trustee for the Bankruptcy Estate of John

Henry Schneider, by and through counsel of record, states his causes of action and

claims for relief against the above-captioned Defendants.

## INTRODUCTION

1.      This is an action to unravel a complex fraudulent scheme whereby

Debtor John Henry Schneider, with the assistance of members of his family,

attempted to employ a web of entities, trusts and transfers to hide his personal

assets from creditors.

## PARTIES

2.     Plaintiff Joseph V. Womack ("Trustee" or "Plaintiff") was appointed to serve as the Chapter 7 Trustee for the Bankruptcy Estate of John Henry Schneider ("Bankruptcy Estate") on December 4, 2014. Pursuant to 11 U.S.C. § 541, the debtor's assets have been transferred to the Bankruptcy Estate, which is administered by the Trustee.

3.     John Henry Schneider is an individual and the debtor in the related bankruptcy case. John Henry Schneider ("Debtor") filed the present voluntary Chapter 7 petition on December 4, 2014. He is also the grantor and Trustee of the John Schneider Revocable Trust Dated November 20, 2007 (the "John Trust"), a self-settled, revocable trust formed by Debtor on November 20, 2007. He also controls, owns, and/or has an ownership interest in several other defendant entities, as set forth below.

4.     Defendant Michelle R. Schneider ("Michelle Schneider" or "Michelle") is an individual and the wife of Debtor. She is also the grantor and Trustee of the Michelle Schneider Revocable Trust Dated November 20, 2007 (the "Michelle Trust") is a self-settled revocable trust formed by or at the direction of Debtor on November 20, 2007. She is also presently the Trustee of the Brandon Schneider Benefit Trust, dated March 30, 2012 (the "Brandon Trust"), the Shannon Schneider Benefit Trust, dated March 30, 2012 (the "Shannon Trust"), and the Caitlin Schneider Benefit Trust, dated March 30, 2012 (the "Caitlin Trust"), a set of purported irrevocable trusts formed by or at the direction of Debtor for the nominal benefit of Debtor and Michelle's children (collectively the "Children's Trusts"). She

also has a nominal ownership interest in, and/or management authority, over several of Debtor's other entities, as set forth below, and helps to conduct their business at Debtor's direction.

5. Defendant Kathleen T. Burrows ("Burrows" or "Kathleen Burrows") is an individual residing in Chino Hills, California. She is the sister of the Debtor. Burrows previously served as the Trustee of the Children's Trusts and has (or had) a nominal ownership interest in, and/or management authority over, several of Debtor's other entities, as set forth below, and helps (or helped) to conduct their business at Debtor's direction.

6. Defendant Schneider Management, LLC ("Schneider Management"), is a Wyoming limited liability company formed by or at the direction of Debtor on or about November 20, 2007. The members of Schneider Management are Debtor and Michelle Schneider, either directly or through the John and Michelle Trusts, respectively. Debtor and Michelle Schneider were the original co-managers of Schneider Management. Debtor became the sole manager as of November 1, 2011, before resigning that station to Kathleen Burrows on March 30, 2012. Burrows was removed as manager on April 17, 2015, and Michelle Schneider is presently the manager of Schneider Management.

7. Defendant Schneider Limited Partnership ("Schneider LP") is a Wyoming limited partnership formed by or at the direction of Debtor on or about November 20, 2007, in which Debtor, through the John Trust, held and continues to hold, at minimum, a 49.5% limited partner interest. Debtor's wife, Michelle, through the Michelle Trust, also held and continues to hold, at most, a 49.5%

limited partner interest in Schneider LP. The other 1% of Schneider LP was and is held by Schneider Management, LLC, as the general partner.

8.     Defendant MedPort, LLC ("MedPort") is a Wyoming limited liability company formed on or about May 1, 2012. Originally, Brandon Schneider, Debtor's son, and Burrows were the members of MedPort. However, through various transfers, for which no consideration was given, the Children's Trusts are now the sole owners/members of MedPort. MedPort was funded solely by Debtor and/or Schneider LP. None of the actual current or past members of MedPort ever made any capital contributions. Burrows is, or was, the manager.

9.     Defendant BSC, LLC ("BSC"), is a Wyoming limited liability company formed by Debtor and of which Debtor was the manager. The members of BSC were originally Debtor's three minor children. However, in 2008, Debtor attempted to retroactively name himself and his wife, Michelle, as members, and then transferred ownership to Schneider LP. At all times, Debtor controlled BSC.

10.    Defendants John Does 1–10 and XYZ Corps. 1–10 are people and entities, presently unknown, who/which participated in the wrongful actions described herein, including those that have rendered financial and/or legal advice in furtherance of Debtor's fraudulent schemes, and who/which will be named in an amended pleading when they are identified.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 334 and 367.

12. This action is a core proceeding within the meaning of 28 U.S.C. § 157(b).

13. Venue is proper pursuant to 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

14. Debtor was a financially successful neurosurgeon who, in the years prior to his bankruptcy, made millions of dollars from his medical practice and from distributions and profits from various entities which he controlled, or in which he had ownership interests. As of late 2011, Debtor claimed a personal net worth of nearly $17,000,000.

15. Through a complex scheme utilizing various entities, trusts and transfers, Debtor has attempted to divest himself of technical ownership of virtually all assets and claims, leaving virtually nothing to satisfy his creditors. Now, in bankruptcy, Debtor claims virtually no assets, and has not accounted for the bulk of the assets he claimed as his own in the years prior to his bankruptcy.

16. Debtor accomplished this disappearing act through a complex scheme of divestitures beginning in 2012, but the foundations of his scheme occurred even earlier.

17. In August of 2006, Debtor purchased an approximately 120 acre ranch property in Wyoming (the "Whispering Winds Ranch" or the "Ranch") to serve as his personal residence. Debtor purchased the Whispering Winds Ranch using Debtor's own funds, but did not place the Whispering Winds Ranch in his own name. Instead, he formed BSC, LLC, a Wyoming limited liability company, and made himself the manager. He then placed the Whispering Winds Ranch under the

ownership of BSC. Debtor did so upon advice of legal counsel to divest himself of technical ownership of the Whispering Winds Ranch for the purpose of asset protection. The description of the parcels of the Whispering Winds Ranch purchased in 2006 is:

Parcel 1:

That part of Farm Unit "M", according to the Farm Unit Plat, described as follows: T. 54 N., R. 100 W., 6th P.M., Park County, Wyoming Section 7: Lot 37; Section 18: Lot 28;

Parcel 2:

That part of Farm Unit "M", according to the Farm Unit described as follows: T. 54 N., R. 101 W., 6th P.M., Park County, Wyoming, Section 12: Lots 7 and 9; Section 13: Lot 16.

18. Thereafter, Debtor continued to claim the Whispering Winds Ranch as his personal residence. He used his own funds to make improvements to the property, including building a home there, and also used his own funds to pay all operating expenses of the Whispering Winds Ranch. Indeed, BSC did not even have a bank account to pay bills, and was not capitalized with any money.

19. On November 20, 2007, Debtor formed the John Schneider Revocable Trust Dated November 20, 2007. Debtor was both grantor and Trustee of the John Trust.

20. On the same date, Debtor and his wife, Michelle, formed the Michelle Schneider Revocable Trust Dated November 20, 2007. Michelle was both grantor and Trustee of the Michelle Trust.

21. Also on November 20, 2007, Debtor and his wife, Michelle, formed Schneider Management, LLC. Debtor and Michelle were the members of Schneider

Management, either individually or through their revocable trusts. Debtor and his wife were also named co-managers of Schneider Management.

22.     Also on November 20, 2007, Debtor formed Schneider Limited Partnership. Debtor, through the John Trust, held and continues to hold, at minimum, a 49.5% limited partner interest. Debtor's wife, Michelle, through the Michelle Trust, also held and continues to hold, at maximum, a 49.5% limited partner interest in Schneider LP. The other 1% of Schneider LP was and is held by Schneider Management, as the general partner. All capital contributions to Schneider LP came from monies earned by Debtor.

23.     Schneider Management was formed to create an illusion of separation between the management of Schneider LP and Debtor, individually. However, at all times since formation, Debtor has exercised actual control and authority over Schneider Management and Schneider LP, and to the extent Michelle Schneider has acted on behalf of either entity, either individually or through the Michelle Trust, she has done so at Debtor's direction.

24.     Virtually all assets of Schneider LP, Schneider Management, the John Trust, and the Michelle Trust represent Debtor's individual earnings, or were acquired through Debtor's individual earning power.

25.     On or about August 1, 2008, Debtor, in his individual capacity, purchased a parcel of real property located in Molt, Montana (hereinafter, the "Molt Property"), more particularly described as follows:

> That part of Sections 22 and 27, Township 1 North, Range 23 East, of the Principal Meridian, Yellowstone County, Montana, described as Tract 56, of Certificate of Survey No. 2184 on file in the office of the

Clerk and Recorder of said County, under Document #1264905. (property address: 12735 Hidden Valley Trail, Molt, MT 59057).

26.     Debtor purchased the Molt Property using his individual funds which, upon information and belief, amounted to $325,000. The deed to Debtor was recorded on October 31, 2008.

27.     On June 10, 2009, Debtor executed a deed conveying the Molt Property to Schneider LP. The deed to Schneider LP was recorded on June 30, 2009. Debtor received no value or consideration for the transfer.

28.     On January 19, 2011, Debtor caused Schneider LP to purchase four additional parcels of property, totaling approximately 50 acres, adjacent to the Whispering Winds Ranch. The money paid for these parcels originally came from Debtor's own funds.[1] The legal description of these four parcels is:

**Parcel 1:**

T.54N., R100W., 6th P.M., Park County, Wyoming, according to the records of the County Clerk and Recorder of Park County, State of Wyoming. Section 7: Lot 36

**Parcel 2:**

A parcel of Land in Lot 27 of Section 18, T.54N., R.100W., 6th P.M., Park County, Wyoming, according to the Government Resurvey, according to the records of the County Clerk and Recorder of Park County, State of Wyoming, said parcel being more particularly described as follows: Beginning at the northwest corner of said Lot 27; thence S.89°50'37"E., along the north line thereof, for 807.49 feet; thence S.49°53'34"W. a distance of 343.65 feet; thence S.70°19'34"W. a distance of 242.11 feet; thence S.84°24'57"W. a distance of 198.63 feet; thence S.27°16'19"W. a distance of 258.28 feet to the west line of said Lot 27; thence N.0°04'00"W. along said west line, for 554.00 feet, more or less, to the point of beginning.

---

[1] Further reference herein to "Whispering Winds Ranch" includes these parcels.

**Parcel 3:**

A parcel of Land in Lot 26 of Section 7, T.54N., R.100W., 6th P.M., Park County, Wyoming, Government Resurvey, according to the records of the County Clerk and Recorder of Park County, State of Wyoming, said parcel being more particularly described as follows: Beginning at the corner common to Lot 26 and Lot 36 of Section 7 and Lot 27 and Lot 28 of Section 18 of said township and range; thence N.0°00'55"E., along the boundary common to said Lot 26 and Lot 36, for 164.84 feet to an angle point in said lot boundary; thence S.65°40'02"E., along said common boundary and said common boundary extended, for 402.49 feet to the southerly boundary of said Lot 26; thence N.89°50'35"W., along said common boundary, for 366.78 feet, more or less, to the point of beginning.

**Parcel 4:**

T.54N., R101W., 6th P.M., Park County, Wyoming, according to the records of the County Clerk and Recorder of Park County, State of Wyoming. Section 12: Lot 8

29.    On February 4, 2011, Debtor caused BSC to transfer the original Whispering Winds Ranch property, acquired in August of 2006, to Schneider LP. Debtor executed the deed as the manager of BSC. Schneider LP provided no consideration for this transfer.

30.    Beginning in 2011 and continuing into 2012, Debtor's financial status took a drastic turn.

31.    First, Debtor and his wife, Michelle, concocted a scheme to disseminate false information and defame a competing surgeon in Wyoming. The surgeon targeted by Debtor's defamatory statements, Jimmie G. Biles, Jr., MD, responded by filing a multi-million dollar defamation lawsuit against Debtor and his wife in December of 2011.

32.    Second, also in 2011, one of Debtor's patients died while under his care, raising the imminent threat of an additional multi-million dollar judgment for

medical malpractice, a claim for which Debtor did not have adequate insurance coverage. In addition, Debtor was facing various other malpractice claims, or the threat of such claims, for which he was likewise under or uninsured.

33. Third, on or about May 23, 2011, Wells Fargo Bank made a loan to Northern Rockies Neuro-Spine, P.C. ("NRNS"), Debtor's solely owned medical practice, in the original amount of up to $850,000. Debtor, Michelle Schneider, Schneider LP, Schneider Management, the John Trust, and the Michelle Trust all executed guarantees on the loan. That loan was to come due in June of 2012.

34. Finally, in early 2012, Debtor's Wyoming medical license was suspended, cutting off his primary source of income.

35. Thus, Debtor found his earning potential significantly handicapped while he, roughly simultaneously, faced significant mounting financial obligations and potential liability.

36. At this time, Debtor either:

    (a)    Knew that he was insolvent and knew that he would not have sufficient funds to pay his liabilities as they came due; or

    (b)    Had sufficient funds to pay his debts but embarked on a scheme to hide such funds and assets from creditors.

37. As a result of these developments, Debtor accelerated his asset-concealment scheme with the assistance of his wife, Michelle, and by using his sister, Kathleen Burrows, as a pawn in his machinations.

38. Debtor, either directly or through Schneider LP, owned and controlled a captive insurance company, Northern Rockies Insurance Company ("NRIC"),

which Debtor had formed some years earlier to insure Debtor and his medical practice, NRNS, against medical malpractice.

39.    In late 2011, in response to the Biles litigation, Debtor began the process of altering the Bylaws of NRIC to extend coverage for defamation claims against Debtor, in order to allow his captive insurance company to pay any ultimate judgment or settlement in the Biles litigation.

40.    Debtor knew that using the funds of NRIC to pay for the Biles litigation would result in the depletion of NRIC's assets and, as a result, a lack of funds to cover any medical malpractice claims.

41.    Next, on March 30, 2012, Debtor resigned as the manager of Schneider Management. Kathleen Burrows was appointed as the new manager and, therefore, as the technical general partner of Schneider LP. Despite this technical change in roles, Debtor continued to control Schneider LP and Schneider Management, either directly or through Burrows.

42.    On the same date, Debtor also formed a set of purported irrevocable trusts for the nominal benefit of his three children, Brandon, Caitlin and Shannon. Debtor named Burrows as Trustee for each of the Children's Trusts. The Children's Trusts were formed for the purpose of hiding Debtor's assets.

43.    On May 30, 2012, Schneider LP deeded the Molt Property back to Debtor. At Debtor's direction, Burrows executed the deed to John Schneider in her capacity as manager of Schneider Management, the general partner of Schneider LP.

44.     On the same date, Debtor deeded the Molt Property to Burrows, in her individual capacity. Debtor received no consideration or value for this transfer. This transfer was done for the purpose of defrauding creditors.

45.     Around the same time, Debtor attempted to further shield the Whispering Winds Ranch from creditors by causing Schneider LP to deed the Ranch to his wife, Michelle. At Debtor's direction, Burrows, as the manager of Schneider Management and therefore general partner of Schneider LP, executed the deed from Schneider LP to Michelle Schneider on June 5, 2012. No consideration was given for this transfer.

46.     On June 8, 2012, at Debtor's direction, Michelle Schneider deeded the Whispering Winds Ranch back to Burrows, as Trustee of the Children's Trusts. Again, no consideration was given for the transfer.

47.     After these transfers of the Whispering Winds Ranch, Debtor continued to pay all expenses for the Ranch with his own funds, continued to treat the Ranch as his residence, and collected payments for rentals at the Ranch in his personal account.

48.     During the same period, Debtor caused the formation of MedPort, LLC, a Wyoming limited liability company. Ostensibly, the owners of MedPort were Kathleen Burrows and Debtor's son, Brandon Schneider. However, MedPort, was entirely funded by Debtor, and was intended to serve as yet another entity for Debtor to hold and control his assets while maintaining the appearance of separate ownership. Burrows was named as the manager of MedPort. None of the named members of MedPort contributed any capital to MedPort.

49.     After the formation of MedPort, through various transfers for which no consideration was given, the Children's Trusts became the sole members/owners of MedPort.

50.     Currently, Debtor claims to act as a consultant for MedPort and is paid a monthly salary. Debtor's wife, Michelle, is also paid a salary by MedPort. MedPort directly pays rent for Debtor's and Debtor's wife's home in California, as well as their living expenses.

51.     On May 1, 2012, MedPort executed a Promissory Note to Schneider LP under which MedPort was entitled to borrow up to $5,000,000 from Schneider LP (the "MedPort Note"). The MedPort Note originally required quarterly interest payments and payments of principal beginning on October 1, 2015.

52.     However, after receiving over $3,000,000.00 from Schneider LP, in January, 2013, Debtor caused the MedPort Note to be amended to provide that MedPort did not have to make any principal or interest payments on the MedPort Note until 2018. Thus, despite receiving millions of dollars from Schneider LP, MedPort has not made any payments to Schneider LP on the MedPort Note. The money given to MedPort substantially depleted Schneider LP's funds and left it insolvent. The MedPort Note is a sham. Pursuant to the sham MedPort Note, Debtor has attempted to hide millions of dollars in MedPort for his personal use and in furtherance of his scheme to defraud creditors.

53.     Also in May of 2012, due to the discovery of incriminating evidence of Debtor's wrongful actions in the Biles litigation, including witness tampering and bribery, Debtor and Debtor's wife, Michelle Schneider, entered into a multi-million

dollar settlement with Dr. Biles (the "Biles Settlement"). Rather than pay that personal obligation with their personal funds, Debtor caused Schneider LP to loan NRNS the money to pay the Biles Settlement on behalf of both Debtor and Michelle. Debtor then caused NRNS to make demand on his captive insurance company, NRIC, for reimbursement of the Biles Settlement. NRIC obliged and paid essentially all of its funds to NRNS. Debtor then caused NRNS to repay the Schneider LP loan (approximately $2.5 million), which money was then immediately transferred to MedPort. The remaining funds from NRIC were used to pay various personal expenses, including Debtor's and Michelle's attorneys' fees from the Biles litigation.

54. Due to these actions, Debtor fully depleted all available insurance funds available to pay any malpractice claims, leaving the victims of his medical malpractice without any insurance funds to pay their claims.

55. When the Wells Fargo loan to NRNS (guaranteed by Debtor, Michelle Schneider, Schneider LP, Schneider Management, the John Trust, and the Michelle Trust) came due on June 15, 2012, NRNS failed to pay the loan balance. Wells Fargo initiated an action and obtained judgments totaling $695,220.15 against NRNS and its guarantors.

56. Wells Fargo domesticated the judgment in Montana and obtained a judgment lien against Debtor's residence in Billings, Montana (the "Judgment Lien").

57. Debtor seized this opportunity to further conceal his assets from creditors. Rather than pay the Wells Fargo judgment, Debtor directed MedPort,

through Burrows and Debtor's son, Brandon, to use funds it had borrowed from Schneider LP to loan $650,000 to the Children's Trusts, of which Burrows was also the Trustee. In return, MedPort received a mortgage against the Whispering Winds Ranch.

58.     Then, using the funds loaned by MedPort, Burrows, as Trustee for the Children's Trusts, purchased the judgment from Wells Fargo, obtaining as part of the deal the Judgment Lien against Debtor's home. This was also done at the direction of Debtor.

59.     Had Debtor not caused Schneider LP to give all of its money to MedPort, Schneider LP, which was liable for the Wells Fargo judgment, could have simply paid the judgment.

60.     Burrows sold the Molt Property in 2013 for $325,000. In February of 2015, Burrows transferred $305,045.50 to an account held by Michelle Schneider at US Bank. Upon information and belief, some or all of these funds were the proceeds of the sale of the Molt Property. Thus, the entire Molt Property transaction, concocted by Debtor, was a scheme by Debtor to hide assets and, after filing bankruptcy, funnel the money back to his wife's account so that he would have access to such funds.

61.     As of February 5, 2015, MedPort had over $1.8 million in an account at US Bank in Montana. However, on February 5, 2015, Debtor caused MedPort to transfer those funds to a California Bank. Debtor then caused MedPort to use those funds to purchase a commercial real estate property in California.

62.    Debtor plans to cause MedPort to trade the commercial real estate property in California to the Children's Trusts in return for the Whispering Winds Ranch.

63.    At Debtor's direction, Michelle Schneider, in her capacity as Trustee of the Michelle Trust, removed Burrows as manager of Schneider Management on April 17, 2015. On the same date, Michelle Schneider appointed herself as manager, and, therefore, as technical general partner of Schneider LP. Despite this technical change in roles, Debtor has controlled, and continues to control, Schneider Management and Schneider LP, either directly or through Burrows, Michelle Schneider, and/or the entities they nominally own and control.

64.    Each of the above-described entities was created and operated with the close consultation of legal counsel, and each of the above-described transactions was carefully guided by legal counsel.

65.    Despite the allegedly separate nature of the above-described entities, Debtor exercised complete control over the entities and their assets, including having control over all bank accounts.

66.    Debtor routinely comingled his personal funds and those of the above-described entities, including but not limited to Schneider LP, Schneider Management, and MedPort, and routinely used such funds to pay for personal living expenses and to satisfy personal obligations.

67.    Indeed, with respect to Schneider LP, Debtor believed that he had the right to demand distributions from Schneider LP at any time, and acted in accordance with that belief. For instance, from February of 2013 through 2014,

Debtor caused Schneider LP to distribute to him and/or pay his personal obligations, including attorneys' fees and settlement costs related to medical malpractice claims, in a total amount of at least $1,658,431.30. During that same time period, Michelle Schneider likewise demanded distributions from Schneider LP in an amount of at least $1,658,431.30.

68. The above-described actions and omissions are all part of Debtor's extensive, years-long fraudulent asset protection scheme, which he has executed with the assistance of his wife, Michelle Schneider, and using his sister, Kathleen Burrows, by and through the various entities under their separate, mutual, and collective ownership and control. This elaborate web of entities and transactions, and the shifting ownership interests and management responsibilities in Debtor's associated entities, was perpetrated at the direction of Debtor in order to construct a system whereby he could funnel his earnings and assets into supposedly "separate" entities to create an illusion of separation from himself, and to obscure and conceal his activities, thereby sheltering his personal assets from the claims of legitimate creditors.

69. Prior to and after Debtor's bankruptcy filings, Debtor has worked closely with legal counsel and his accountants to further develop his fraudulent scheme and hide further hide assets that should be available for creditors.

70. Other than NRNS, none of the entities kept up to date books or accountings. Instead, Debtor controlled the entities and did as he pleased, then, after the fact, manipulated the books as best suited his needs.

71.     For example, with respect to Schneider LP, Debtor and his accountant worked extensively in late 2014 and early 2015 to redo the accounting for Schneider LP to attempt to minimize Debtor's interest and maximize Michelle Schneider's interest. Debtor flatly stated in e-mails with his professional advisors that these efforts were intended to minimize assets available to Debtor's Chapter 7 bankruptcy estate.

72.     Further, Debtor was entitled to a substantial tax refund from the IRS. However, working with his accountant, Debtor manipulated his returns to eliminate the refund and, instead, carry it forward as a loss on his returns. This was done for the purpose removing assets from the Chapter 7 bankruptcy estate.

73.     Prior to his bankruptcy, Debtor's homes in Billings and the Whispering Winds Ranch were furnished with expensive furniture and household goods. Since the bankruptcy filing, Debtor has removed the majority of these furnishing and goods, upon information and belief, to California. These furnishings and goods are property of the bankruptcy estate.

## COUNT I – SUBSTANTIVE CONSOLIDATION
### (Schneider LP, Schneider Management, and MedPort)

74.     Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

75.     Creditors of Debtor dealt with Debtor, Schneider LP, Schneider Management, and MedPort as a single economic unit and did not rely on their separate identities in extending credit.

76.     Debtor has comingled and conflated his personal assets and liabilities with those of Schneider LP, Schneider Management, and MedPort, and otherwise entangled their property and affairs by actions including, but not limited to those set forth above, and particularly including:

(a)     Claiming the assets of Schneider LP, Schneider Management and/or MedPort as his own in obtaining credit;

(b)     Exercising control over the assets of Schneider LP, Schneider Management, and/or MedPort and using such assets as his own to pay personal costs and satisfy personal debts and liabilities;

(c)     Comingling assets of Debtor, Schneider LP, Schneider Management, and/or MedPort,

(d)     Directing the transfer of assets between and among Debtor and his various entities, as well as other persons and entities acting under Debtor's direction or control, including fraudulent transfers and distributions; and

(d)     Using Schneider LP, Schneider Management, and/or MedPort as vehicles to attempt to divest Debtor of technical ownership of assets, including but not limited to concealing Debtor's dealings with those assets, funneling Debtor's personal assets into and through the entities, and otherwise hiding personal assets from creditors.

77.     Though technically distinct from Debtor, Schneider LP, Schneider Management, and MedPort are all related in ownership and management such that

they are effectively a single entity, and have been treated as such, except when it has been convenient for Debtor to do otherwise in order to advance his fraudulent scheme.

78.  Debtor has disregarded and abused the formalities governing partnerships and limited liability companies.

79.  Schneider LP, Schneider Management, and MedPort are the alter egos of Debtor.

80.  Debtor has used Schneider LP, Schneider Management and MedPort as an extension of himself, and equity requires that these entities be substantively consolidated into Debtor's bankruptcy estate.

81.  Schneider LP, Schneider Management and MedPort do not keep reasonable or adequate financial records or accountings. Instead, Debtor controls the entities and manipulates the accountings for his own purposes.

82.  Without substantive consolidation, the Trustee may be thwarted in his efforts to recover Debtor's assets from third parties, and thus obtain a fair and equitable recovery for Debtor's legitimate creditors.

83.  The creditors of Debtor, Schneider LP, Schneider Management, and MedPort will not be harmed by substantive consolidation, but will benefit.

84.  Trustee is therefore entitled to an order substantively consolidating Schneider LP, Schneider Management, and MedPort into Debtor's bankruptcy estate. The order should specifically state that consolidation is effective *nunc pro tunc* to the date of Debtor's bankruptcy filing. Further, the order should specifically state that Trustee is entitled to pursue any and all claims of action belonging to

Schneider LP, Schneider Management and/or MedPort, including but not limited to actions for recovery of fraudulent transfers.

## COUNT II – REVERSE PIERCING/ALTER EGO
### (Schneider LP, Schneider Management, MedPort, and BSC)

85.     Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

86.     Schneider LP, Schneider Management, MedPort, and BSC were, and are, mere instrumentalities of Debtor for the transaction of Debtor's own affairs. There is such a unity of interest in ownership and control between Debtor, Schneider LP, Schneider Management, MedPort, and BSC that the separate personalities of these entities no longer exist.

87.     Schneider LP, Schneider Management, MedPort, and BSC were not operated as distinct business entities. Instead, they were operated as an extension of Debtor and were controlled by Debtor, or at Debtor's direction.

88.     Debtor has claimed, or otherwise treated, the assets of Schneider LP, Schneider Management, MedPort and BSC as his own, and has utilized, transferred, or directed the transfer of such assets in the exercise of his sole discretion for his personal benefit.

89.     Debtor has commingled his personal funds and assets with those of Schneider LP, Schneider Management, MedPort, and BSC. Debtor was and is the signatory on bank accounts for the entities, routinely transferred funds and assets between himself and the entities, and utilized the entities' funds and assets for his

personal benefit. Further, Debtor regularly represented the funds and assets of the entities to be his own.

90.   Debtor exercised legal control over Schneider Management and Schneider LP from November 20, 2007 until his resignation as manager of Schneider Management on March 30, 2012, and exercised sole legal control over BSC at all times. Debtor has exercised actual control over Schneider Management, Schneider LP, MedPort and BSC at all times.

91.   The nature and form of the ownership and control of Schneider LP, Schneider Management, MedPort and BSC facilitated misuse by their insider, Debtor.

92.   Debtor formed and used Schneider LP, Schneider Management, MedPort and BSC to perpetrate a fraud and to frustrate the claims of legitimate creditors. Specifically, Debtor used the entities to hide assets and transfer assets to third parties in order to protect such assets from the claims of creditors. Equity requires that the Court find that Schneider LP, Schneider Management, MedPort and BSC are the alter egos of Debtor, and that the corporate veil be disregarded.

93.   Trustee is therefore entitled to an order that Schneider LP, Schneider Management, MedPort and BSC are the alter egos of Debtor, and that the corporate shields be pierced in reverse. Trustee is further entitled to an order that, as the alter egos of Debtor, the assets of Schneider LP, Schneider Management, MedPort and BSC are property of the bankruptcy estate available to Debtor's creditors, and that the Trustee is entitled to pursue any and all claims of action belonging to

Schneider LP, Schneider Management, MedPort and/or BSC, including but not limited to actions for recovery of fraudulent transfers.

## COUNT III – FRAUDULENT TRANSFER OF WHISPERING WINDS RANCH
### (Michelle Schneider, individually and as Trustee of the Children's Trusts)

94.     Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

95.     Debtor purchased the Whispering Winds Ranch using his own funds and made various improvements to the Whispering Winds Ranch using his own funds. Further, at all times, Debtor has paid all expenses of the Ranch with his own funds. However, when Debtor purchased the Whispering Winds Ranch, he placed title in the name of BSC, an alter ego entity controlled by Debtor.

96.     In 2011, Debtor caused BSC to transfer the Whispering Winds Ranch to Schneider LP, another alter ego entity under Debtor's control. No consideration was given for this transfer.

97.     Then, in 2012, Debtor caused Schneider LP to transfer the Whispering Winds Ranch to Debtor's wife, Michelle Schneider. Again, no consideration was given for the transfer.

98.     At the time of the 2012 transfer, the Whispering Winds Ranch was the property of the Debtor. Thus, the Trustee is the proper party to pursue this fraudulent transfer claim on behalf of Debtor's creditors.

99.     In the alternative, Trustee, as the successor to Debtor's 49.5% limited partnership interest in Schneider LP through the John Trust, is a creditor of

Schneider LP, and is therefore entitled to pursue the fraudulent transfer of the Whispering Winds Ranch from Schneider LP.

100. At the time of the 2012 transfer of the Whispering Winds Ranch:

    (a)    Debtor's remaining assets were unreasonably small and Debtor should have reasonably believed that he would be unable to pay his debts as they came due;

    (b)    Debtor was insolvent or became insolvent as a result of the distribution;

    (c)    Debtor was engaged or about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to such business or transaction; and/or

    (d)    Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

101. The 2012 transfer of the Whispering Winds Ranch was made with the intent to hinder, delay, or defraud Debtor's creditors, and the creditors of Debtor's affiliated entities.

102. The 2012 transfer of the Whispering Winds Ranch was therefore fraudulent and avoidable.

103. Three days after the transfer from Schneider LP to Michelle Schneider, Michelle transferred the Whispering Winds Ranch to Kathleen Burrows, as Trustee of the Children's Trusts. Again, no consideration was given for this transfer.

104.   The Children's Trusts still hold title to the Whispering Winds Ranch.

105.   Michelle Schneider, individually, and Burrows, as Trustee for the Children's Trusts, were not good faith transferees. Rather, they were complicit in Debtor's scheme to conceal the asset from creditors through a series of fraudulent transfers. These transfers are therefore also avoidable. Further, Michelle Schneider is now the Trustee of the Children's Trusts.

106.   Michelle Schneider is not the Trustee for the Children's Trusts.

107.   Joseph V. Womack, as Chapter 7 trustee for Debtor, has all of the rights of creditors to bring avoidance claims under applicable state law.

108.   Pursuant to 11 U.S.C. § 544(b), the Whispering Winds Ranch transfers were fraudulent transfer under WYO. STAT. ANN. §§ 34-14-205 and 206.

109.   The Trustee is therefore entitled to an order that the Whispering Winds Ranch transfers may be avoided pursuant to 11 U.S.C. § 550.

110.   Pursuant to 11 U.S.C. § 551, the Whispering Winds Ranch transfers avoided under § 544(b) are preserved for the benefit of the Bankruptcy Estate.

111.   In the alternative to avoidance of the fraudulent transfers, pursuant to 11 U.S.C. § 550(a) and WYO. STAT. ANN. § 34-14-209(b), the Trustee is entitled to a money judgment against Michelle Schneider and the Children's Trusts for the value of the Whispering Winds Ranch.

## COUNT IV – FRAUDULENT TRANSFER RE: LOAN TO MEDPORT
### (MedPort)

112.   Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

113. On May 1, 2012, MedPort executed a Promissory Note in favor of Schneider LP, allowing MedPort to borrow up to $5,000,000 from Schneider LP.

114. Kathleen Burrows executed the MedPort Note in her capacity as manager of MedPort, at the direction of Debtor. At the same time, at the director of Debtor, Burrows was the named manager of Schneider Management, and therefore acted as the general partner of Schneider LP, under the direction of Debtor.

115. Pursuant to the MedPort Note, Schneider LP transferred funds to MedPort in an amount exceeding $3,000,000.

116. In January of 2013, at Debtor's direction, the MedPort Note was amended to provide that no payments of principal or interest were required until 2018.

117. The MedPort Note is a sham, and has been used by Debtor to funnel personal funds through Schneider LP in an attempt to hide assets from the creditors of Debtor and Schneider LP. MedPort has not made any principal or interest payments on the MedPort Note.

118. Because Schneider LP is the alter ego of Debtor, the transfer of funds from Schneider LP to MedPort was a transfer of Debtor's property.

119. Schneider LP and Debtor did not receive any valid consideration, much less reasonably equivalent value, for the funds transferred to MedPort, purportedly pursuant to the MedPort Note.

120. At the time of the transfer of funds to MedPort:

    (a)    Schneider LP's and Debtor's remaining assets were unreasonably small and they should have reasonably believed that they would be unable to pay its debts as they came due;

    (b)    Schneider LP and Debtor were insolvent or became insolvent as a result of the transfers;

    (c)    Schneider LP and Debtor were engaged or about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to such business or transaction; and/or

    (d)    Schneider LP and Debtor intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

121. The insolvency of Schneider LP and Debtor caused by the transfer of funds to MedPort is demonstrated by the fact that Debtor and Schneider LP did not pay the judgment obtained against them by Wells Fargo, as described above. Instead, MedPort used the funds it obtained from Schneider LP to facilitate the purchase of the judgment by the Children's' Trusts, and to create further encumbrances against Debtor's property.

122. The transfer of funds to MedPort was made with the intent to hinder, delay, or defraud creditors of Schneider LP and Debtor and their affiliated entities.

123. MedPort was not a good faith transferee. Rather, through Burrows and at Debtor's direction, it was complicit in Debtor's scheme to conceal asset from Debtor's and Schneider LP's creditors.

124. Joseph V. Womack, as Chapter 7 trustee for Debtor, has all of the rights of creditors to bring avoidance claims under applicable state law.

125. Pursuant to 11 U.S.C. § 544(b), the transfer of funds to MedPort was a fraudulent transfer under WYO. STAT. ANN. §§ 34-14-205 and 206.

126. The Trustee is therefore entitled to an order that the transfer of funds to MedPort may be avoided pursuant to 11 U.S.C. § 550.

127. Pursuant to 11 U.S.C. § 551, the transfer of funds to MedPort avoided under § 544(b) are preserved for the benefit of the Bankruptcy Estate.

128. In the alternative to avoidance of the fraudulent transfer, pursuant to 11 U.S.C. § 550(a) and WYO. STAT. ANN. § 34-14-209(b), Trustee is entitled to a money judgment against MedPort for the total value of the funds transferred to MedPort.

## COUNT V – FRAUDULENT AND PREFERENTIAL TRANSFER RE: JUDGMENT LIEN AND MEDPORT MORTGAGE
### (MedPort and Michelle Schneider, as Trustee of the Children's Trusts)

129. Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

130. As set forth above, Wells Fargo obtained a judgment against Debtor, Michelle Schneider, Schneider LP, the John Trust, the Michelle Trust, and Schneider Management in the amount of $695,220.15.

131. Wells Fargo domesticated the judgment in Montana and obtained the Judgment Lien against Debtor's residence in Billings, Montana.

132. Rather than paying the judgment, Debtor seized this opportunity to further conceal his assets from creditors

133. Debtor, using his sister, Kathleen Burrows, executed a scheme whereby MedPort, an entity now owned by the Children's Trusts, used funds it had borrowed from Schneider LP to loan $650,000 to Debtor's Children's Trusts, of which Burrows was also the Trustee. In return, MedPort received a mortgage against the Whispering Winds Ranch.

134. Then, using the funds loaned by MedPort, Burrows, as Trustee for the Childrens' Trusts, purchased the judgment from Wells Fargo, obtaining as part of the deal the Judgment Lien against Debtor's home.

135. Thus, rather than pay the judgment against him and remove the Judgment Lien, Debtor orchestrated a scheme whereby MedPort obtained a mortgage against the Whispering Winds Ranch and the Children's Trusts obtained the Judgment Lien against Debtor's residence, further prejudicing creditors.

136. Now, Michelle Schneider is the Trustee of the Children's Trusts, and the Children's Trusts are the sole owners of MedPort.

137. The Court should collapse these various transfers and treat them as a single, integrated transaction for fraudulent transfer purposes.

138. As described above, at the start of the transfers, Schneider LP was in a financial state sufficient to satisfy the statutory requirements for a finding of a constructively fraudulent transfer.

139. This scheme was executed with the intent to hinder, delay and defraud Debtor's and Schneider LP's creditors.

140. Pursuant to 11 U.S.C. § 544(b), MedPort's mortgage on the Whispering Winds Ranch and the Judgment Lien held by the Children's Trusts constitute fraudulent transfers under WYO. STAT. ANN. §§ 34-14-205 and 206, and MONT. CODE. ANN. §§ 31-2-333 and 334.

141. Further, MedPort's mortgage on the Whispering Winds Ranch and the Judgment Lien held by the Children's Trusts constitute fraudulent transfers under 11 U.S.C. § 548.

142. MedPort and the Children's Trusts were not good faith transferees. Rather, through Burrows and at Debtor's direction, they were complicit in Debtor's scheme to conceal asset from creditors.

143. Finally, MedPort's mortgage on the Whispering Winds Ranch and the Judgment Lien held by the Children's Trusts constitute preference payments made to insiders pursuant to 11 U.S.C. § 547.

144. The Trustee is therefore entitled to an order that MedPort's mortgage on the Whispering Winds Ranch and the Judgment Lien held by the Children's Trusts may be avoided pursuant to 11 U.S.C. § 550.

145. Pursuant to 11 U.S.C. § 551, the Medport mortgage on the Whispering Winds Ranch and the Judgment Lien held by the Children's Trusts avoided under § 547 are preserved for the benefit of the Bankruptcy Estate.

146. In the alternative, the Judgment Lien and MedPort's mortgage on the Whispering Winds Ranch should be transferred to Trustee.

## COUNT VI – FRAUDULENT AND PREFERENTIAL
## TRANSFER RE: SCHNEIDER LP DISTRIBUTIONS
### (Michelle Schneider)

147.   Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

148.   Beginning in February of 2013, and continuing into 2014, Michelle Schneider took distributions from Schneider LP in an amount of at least $1,658,431.30, either in cash or in property.

149.   Michelle Schneider was an insider of Schneider LP, which was the alter ego of Debtor under his control. Thus, the funds taken as distributions from Schneider LP were property of the bankruptcy estate.

150.   Schneider LP and Debtor did not receive any consideration, much less reasonably equivalent value, for the distributions to Michelle Schneider.

151.   At the time of the transfer of the distributions to Michelle Schneider, Schneider LP's and Debtor's remaining assets were unreasonably small and they should have reasonably believed that they would be unable to pay its debts as they came due.

152.   At the time of the distributions to Michelle Schneider:

(a)   Schneider LP and Debtor were insolvent or became insolvent as a result of the transfers;

(b)   Schneider LP and Debtor were engaged or about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to such business or transaction; and/or

(c)   Schneider LP and Debtor intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due;

153.   The distributions to Michelle Schneider were made with the intent to hinder, delay, or defraud creditors of Schneider LP and Debtor and their affiliated entities.

154.   Michelle Schneider was not a good faith transferee. Rather, she was complicit in Debtor's scheme to conceal Debtor's and Schneider LP's assets from creditors.

155.   Joseph V. Womack, as Chapter 7 trustee for Debtor, has all of the rights of creditors to bring avoidance claims under applicable state law.

156.   Pursuant to 11 U.S.C. § 544(b), the distributions to Michelle Schneider were fraudulent transfers under WYO. STAT. ANN. §§ 34-14-205 and 206, and/or MONT. CODE. ANN. §§ 31-2-333 and 334.

157.   Further, the distributions to Michelle Schneider constitute fraudulent transfers under 11 U.S.C. § 548.

158.   Finally, certain distributions to Michelle Schneider constitute preference payments made to insiders pursuant to 11 U.S.C. § 547.

159.   The Trustee is therefore entitled to an order that the distributions to Michelle Schneider may be avoided pursuant to 11 U.S.C. § 550.

160.   Pursuant to 11 U.S.C. § 551, the distributions to Michelle Schneider avoided under §§ 544(b) and 547 are preserved for the benefit of the Bankruptcy Estate.

161.    In the alternative to avoidance of the fraudulent transfer, pursuant to 11 U.S.C. § 550(a) and W YO. STAT. ANN. § 34-14-209(b) or MONT. CODE. ANN. § 31-2-340(2, Trustee is entitled to a money judgment against Michelle Schneider for the total value of the distributions from Schneider LP.

## COUNT VII – FRAUDULENT TRANSFER RE: BILES SETTLEMENT
### (Michelle Schneider)

162.    Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

163.    In 2011, Debtor and his wife, Michelle Schneider, were sued by Dr. Jimmie G. Biles, Jr. for defamation.

164.    In May of 2012, due to the discovery of incriminating evidence of Debtor's wrongful actions in the Biles litigation, Debtor and Debtor's wife, Michelle Schneider, entered into a multi-million dollar settlement with Dr. Biles.

165.    The settlement as to both defendants (Debtor and his wife) was paid with Debtor's individual earnings. Specifically, Debtor caused his solely owned entity, NRNS, to pay the full settlement amount, including the portion representing the individual liability of Michelle Schneider. Michelle Schneider made no personal contribution for the amount paid to Dr. Biles to resolve his claims against her.

166.    The funds used to satisfy Dr. Biles' settlement with Michelle Schneider were the property of Debtor and solely owned entity, NRNS, and therefore property of the bankruptcy estate. The payment of an obligation owed by Michelle Schneider constitutes a transfer of Debtor's assets to Michelle Schneider.

167. Debtor received no consideration for the amounts paid to Dr. Biles on behalf of Michelle Schneider.

168. At the time of the settlement of the Biles litigation:

(a) Debtor was insolvent or became insolvent as a result of the transfers;

(b) Debtor was engaged or about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to such business or transaction; and/or

(c) Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

169. This settlement arrangement was intended to defraud creditors of Debtor and his affiliated entities.

170. Joseph V. Womack, as Chapter 7 trustee for Debtor, has all of the rights of creditors to bring avoidance claims under applicable state law.

171. Pursuant to 11 U.S.C. § 544(b), the transfers to Michelle Schneider for the purposes of satisfying her personal liability in the Biles Settlement were fraudulent under WYO. STAT. ANN. §§ 34-14-205 and 206 and/or MONT. CODE. ANN. §§ 31-2-333 and 334, as well as 11 U.S.C. § 548.

172. The Trustee is therefore entitled to an order that the transfers to Michelle Schneider for the purpose of settling the Biles litigation may be avoided pursuant to 11 U.S.C. § 550.

173.    Pursuant to 11 U.S.C. § 551, the payments made on behalf of Michelle Schneider for purposes of settling the Biles litigation avoided under §§ 544(b) and 548 are preserved for the benefit of the Bankruptcy Estate.

174.    In the alternative to avoidance of the fraudulent transfer, pursuant to 11 U.S.C. § 550(a) and Wyo. Stat. Ann. § 34-14-209(b) or Mont. Code. Ann. § 31-2-340(2), the Trustee is entitled to a money judgment against Michelle Schneider for the total value of her half of the Biles Settlement, as paid by the Debtor and his solely owned entity, NRNS.

## COUNT VIII – DIRECT AND DERIVATIVE CLAIM FOR CONVERSION
(Michelle Schneider, individually and as Trustee of the Children's Trusts)

175.    Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

176.    The Trustee brings this claim directly on behalf of the estate by virtue of the fact that Schneider LP is an alter ego of the Debtor. Alternatively, the Trustee brings this claim as a derivative claim on behalf of Schneider LP.

177.    Debtor, through the John Trust, held a minimum of a 49.5% limited partnership interest in Schneider LP. Pursuant to 11 U.S.C. § 541, the John Trust is property of the estate. Thus, the Trustee has succeeded to a minimum of a 49.5% limited partnership interest in Schneider LP.

178.    Pursuant to Wyo. Stat. Ann. § 17-14-1101, a limited partner may bring a derivative action on behalf of a limited partnership where an effort to cause the general partner to bring the action is not likely to succeed.

179.   The general partner of Schneider LP is Schneider Management, which is currently managed by Debtor's wife, Michelle Schneider. Michelle is also the Trustee of the Children's Trusts, the mother of the children who nominally stand to benefit from the Children's Trusts, the husband of Debtor who actually stands to benefit from the Children's Trusts, and, in her individual capacity, is potentially personally liable for this claim. Michelle is complicit in Debtor's scheme to conceal his assets from creditors, is personally and financially tied to Debtor, and a demand upon the general partner of Schneider LP to pursue claims for conversion would effectively require Michelle Schneider to bring claims against herself and her family. Thus, a demand to the general partner of Schneider LP to pursue claims for conversion would be futile, and the Trustee may bring such claims derivatively.

180.   Debtor's wife, Michelle Schneider, and Debtor, using his sister, Kathleen Burrows, devised a scheme to divest Schneider LP of the Whispering Winds Ranch. To accomplish that end, Burrows, as manager of Schneider Management and at Debtor's direction, executed a deed transferring the Whispering Winds Ranch from Schneider LP to Michelle Schneider. No consideration was given to Schneider LP for this transfer. Michelle Schneider then completed the scheme by deeding the Whispering Winds Ranch back to Kathleen Burrows, in her capacity as Trustee of the Children's Trusts, also with no consideration. Now, Michelle Schneider has replaced Burrows as Trustee of the Children's Trusts.

181.   The Whispering Winds Ranch rightfully belongs to Schneider LP, and, accordingly, to the bankruptcy estate. Burrows, as Trustee of the Children's Trusts,

unlawfully took possession of and title to the Whispering Winds Ranch, and now, Michelle Schneider, as the replacement Trustee, is exercising unlawful dominion over it.

182. Additionally, beginning in February of 2013, and continuing into 2014, Michelle Schneider wrongfully took distributions from Schneider LP in an amount of at least $1,658,431.30 in cash or property. This money or property is rightfully property of the bankruptcy estate.

183. Schneider LP, the Trustee and the bankruptcy estate have been damaged by these acts of conversion and are entitled to an order requiring Michelle Schneider, as Trustee of the Children's Trusts, to transfer the Whispering Winds Ranch back to Schneider LP, and an order requiring Michelle Schneider to return any distributions from Schneider LP, or, in the alternative, to recover such damages as proven at trial.

## COUNT IX – DIRECT AND DERIVATIVE CLAIM FOR NEGLIGENCE
### (Kathleen Burrows and Michelle Schneider, individually and as Managers of Schneider Management)

184. Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

185. The Trustee brings this claim directly on behalf of the estate by virtue of the fact that Schneider LP is an alter ego of the Debtor. Alternatively, the Trustee brings this claim as a derivative claim on behalf of Schneider LP.

186. Debtor, through his revocable trust, held a minimum of a 49.5% limited partnership interest in Schneider LP. Pursuant to 11 U.S.C. § 541, the

revocable trust is property of the estate. Thus, Trustee has succeeded to a minimum of a 49.5% limited partnership interest in Schneider LP.

187.    Pursuant to WYO. STAT. ANN. § 17-14-1101, a limited partner may bring a derivative action on behalf of a limited partnership where an effort to cause the general partner to bring the action is not likely to succeed.

188.    The general partner of Schneider LP is Schneider Management, which is currently managed by Debtor's wife, Michelle Schneider. Thus, a claim for negligence on behalf of Schneider LP would have to be brought by Michelle Schneider against herself and/or her sister-in-law, Kathleen Burrows, the former manager of Schneider Management. Michelle is personally and financially tied to Debtor, and is complicit in Debtor's scheme to conceal his assets from creditors, including using Burrows in furtherance of such concealment. A demand to the general partner of Schneider LP to pursue claims for negligence would therefore be futile and the Trustee may bring such claims derivatively.

189.    Burrows and Michelle Schneider, as managers of Schneider Management and therefore technical general partners of Schneider LP, owed duty to the limited partners to carry out partnership business in a reasonable and prudent manner in order to protect and advance the interests of the partnership.

190.    Burrows and Michelle Schneider breached these duties in various ways, notably including the following.

191.    Kathleen Burrows, as manager of Schneider Management, executed a deed transferring the Whispering Winds Ranch from Schneider LP to Michelle Schneider. No consideration was given to Schneider LP for this transfer.

192. The Whispering Winds Ranch rightfully belongs to Schneider LP, and, accordingly, to the bankruptcy estate. Burrows, as Trustee of the Children's Trusts, unlawfully took possession of and title to the Whispering Winds Ranch.

193. Michelle Schneider, as the replacement Trustee of the Children's Trusts, continues to exercise unlawful dominion over the Ranch. As manager of Schneider Management and therefore technical general partner of Schneider LP, she has failed to take action to recover what is rightfully partnership property, or otherwise protect the interests of the limited partners.

194. Additionally, beginning in February of 2013, and continuing into 2014, Burrows, at Debtor's direction, allowed Michelle Schneider to take distributions from Schneider LP in an amount of at least $1,658,431.30 at a time when Schneider LP could not afford to give such distributions.

195. By transferring the Whispering Winds Ranch to Michelle Schneider for no consideration, Burrows negligently breached the duties she owed to Schneider LP and its limited partners.

196. Burrows further breached her duties by permitting Michelle Schneider to wrongfully receive distributions from Schneider LP.

197. Michelle Schneider breached her duties by participating in the foregoing fraudulent transfers and wrongful distributions and failing to take action to protect the interests of the limited partners, including recovering and restoring partnership property which was wrongfully distributed to her and others.

198.   Schneider LP, the Trustee and Debtor's estate have been damaged by these negligent acts and are entitled to recover such damages from Burrows and/or Michelle Schneider as are found at trial.

## COUNT X – DIRECT AND DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY
### (Kathleen Burrows and Michelle Schneider, individually and as Managers of Schneider Management)

199.   Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

200.   The Trustee brings this claim directly on behalf of the estate by virtue of the fact that Schneider LP is an alter ego of the Debtor. Alternatively, the Trustee brings this claim as a derivative claim on behalf of Schneider LP.

201.   Debtor, through his revocable trust, held at minimum a 49.5% limited partnership interest in Schneider LP. Pursuant to 11 U.S.C. § 541, the revocable trust is property of the estate. Thus, Trustee has succeeded to a minimum of a 49.5% limited partnership interest in Schneider LP.

202.   Pursuant to WYO. STAT. ANN. § 17-14-1101, a limited partner may bring a derivative action on behalf of a limited partnership where an effort to cause the general partner to bring the action is not likely to succeed.

203.   The general partner of Schneider LP is Schneider Management, which is currently managed by Debtor's wife, Michelle Schneider. Thus, a claim for breach of fiduciary duty on behalf of Schneider LP would have to be brought by Michelle Schneider against herself and/or her sister-in-law, Kathleen Burrows, the former manager of Schneider Management. Michelle is personally and financially tied to

Debtor, and is complicit in Debtor's scheme to conceal his assets from creditors, including using Burrows in furtherance of such concealment. A demand to the general partner of Schneider LP to pursue claims for breach of fiduciary duty would therefore be futile and the Trustee may bring such claims derivatively.

204.  Burrows, as the manager of Schneider Management, which is the general partner of Schneider LP, owed fiduciary duties to Schneider LP and its limited partners, including the Trustee, including but not limited to: a duty of loyalty, a duty to account and keep accurate records, a duty to use partnership funds for partnership purposes, a duty to act for the benefit of the partnership and the limited partners, a duty to not accept or allow others to accept personal benefits at the expense of the partnership, a duty to refrain from engaging in harmful or illegal conduct or allowing others to do so on behalf of the partnership, and a duty to act in a reasonable and prudent manner to protect and advance the interests of the limited partners.

205.  Burrows and Michelle Schneider breached these duties in various ways, notably including the following.

206.  Burrows and Michelle Schneider breached their fiduciary duties by failing to exercise independent judgment and allowing Debtor to control and manipulate Schneider Management, and therefore Schneider LP, for his personal benefit and for the purpose of concealing assets in furtherance of his fraudulent scheme.

207.  Burrows and Michelle Schneider breached their fiduciary duties to keep accurate records and account for partnership funds, and instead allowed

Debtor to alter, manipulate and contrive partnership records in order to conceal his fraudulent activities.

208. Burrows breached her fiduciary duty by transferring the Whispering Winds Ranch to Michelle Schneider for no consideration, and by permitting wrongful distributions to Michelle Schneider,

209. Schneider LP, the Trustee and Debtor's estate have been damaged by these breaches of fiduciary duty and are entitled to recover such damages from Burrows and/or Michelle Schneider as are found at trial.

## COUNT XI – CONSPIRACY
### (Michelle Schneider, Debtor, John Does 1–10 and XYZ Corps. 1–10)

210. Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

211. The wrongs complained of herein all have a common link—they have been perpetrated at Debtor's direction, with the assistance of Debtor's wife, Michelle Schneider, and with the assistance of professional advice sought and obtained from John Does 1–10 and XYZ Corps. 1–10.

212. Debtor, Michelle Schneider, John Does 1–10 and XYZ Corps. 1–10 conspired among themselves to cause Debtor to divest himself of technical ownership of his assets.

213. Debtor, Michelle Schneider, John Does 1–10 and XYZ Corps. 1–10 had a meeting of minds regarding such conspiracy, the object of which was to defraud Debtor's creditors.

214.   Debtor and Michelle Schneider, individually and in various other capacities on behalf of entities which they own and/or control, with the assistance and advice of John Does 1–10 and XYZ Corps. 1–10, took one or more unlawful overt acts in furtherance of such conspiracy. The wrongful actions taken by Debtor, Michelle Schneider, John Does 1–10 and XYZ Corps. 1–10 include, but are not limited to:

   (a)   Plotting out and creating a web of business entities for the purposes of concealing Debtor's assets and obscuring the transfers of those assets in order to defraud legitimate creditors;

   (b)   Fraudulently transferring the Whispering Winds Ranch to Michelle and then to the Children's Trusts;

   (c)   Fraudulently transferring funds to MedPort;

   (d)   Devising a scheme whereby MedPort obtained a mortgage on the Whispering Winds Ranch and the Children's Trusts obtained the Judgment Lien on Debtor's residence;

   (e)   Breaching duties to Debtor and Schneider LP through the divestment of various assets; and

   (f)   Fraudulently transferring funds to Michelle Schneider in the form of distributions from Schneider LP.

215.   Debtor, Michelle Schneider, John Does 1–10 and XYZ Corps. 1–10 are each liable for all actions of each and every other co-conspirator taken in furtherance of the conspiracy.

216.   Trustee and Debtor's bankruptcy estate have been damaged as a result of the conspiracy and the unlawful acts taken in further of the conspiracy and Trustee is entitled to recover damages against Debtor, Michelle Schneider, John Does 1–10 and XYZ Corps. 1–10 in an amount to be proven at trial.

## COUNT XII – DECLARATORY JUDGMENT RE: JOHN TRUST
### (John Trust)

217.   Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

218.   The John Trust is a self-settled, revocable trust formed on November 20, 2007, of which Debtor was the grantor and is the Trustee.

219.   The John Trust, including all assets or claims that it owns, is property of the bankruptcy estate.

220.   Debtor, as Trustee of the John Trust, disputes that the John Trust is property of the bankruptcy estate.

221.   There is an actual and existing controversy regarding whether the John Trust is property of Debtor's estate, and a judicial declaration is necessary to determine the parties' respective rights.

222.   The Trustee is entitled to a judicial declaration that the John Trust is property of the estate.

## COUNT XIII – DECLARATORY JUDGEMENT RE: CHILDREN'S TRUSTS
### (Michelle Schneider, as Trustee of the Children's Trusts)

223.   Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

224. Pursuant to WYO. STAT. ANN. § 4-10-405, a "trust may be created only to the extent its purposes are lawful [and] not contrary to public policy …" and a trust terminates if those conditions are not met. WYO. STAT. ANN. § 4-10-411(a).

225. Avoidance of the grantor's creditors is an unlawful purpose and is contrary to public policy.

226. There is an actual and existing controversy regarding whether the Children's Trusts are void, and a judicial declaration is necessary to determine the parties' respective rights.

227. The Trustee is entitled to a judicial declaration that the Children's Trusts were formed for an illegal and improper purpose and have been used in furtherance of illegal acts, and are therefore void, and declaring all assets of the Children's Trusts to be property of the bankruptcy estate.

## COUNT XIV – DECLARATORY RELIEF, ACCOUNTING AND TURNOVER OF ESTATE PROPERTY
### (Debtor and Michelle Schneider)

229. Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

230. The furnishings and household goods that Debtor and his wife, Michelle, removed from their Billings residence and the Whispering Winds Ranch are property of the estate. Debtor and/or Michelle Schneider are in possession of such property.

231. Debtor and Michelle Schneider dispute that this property is property of the estate.

232.    Thus, there is an actual and existing dispute regarding the furnishing and household goods and a judicial declaration is necessary to determine the parties' respective rights.

233.    Trustee is entitled to a declaration that the household furnishings and goods are property of the estate.

234.    The Court should order an accounting of all such property, order that such property is property of the estate, and order Debtor and Michelle to turn over all such property to the Trustee.

<u>COUNT XV – RECOVERY FROM TRANSFEREE OF</u>
<u>FRAUDULENT TRANSFER RE: MOLT PROPERTY</u>
(Michelle Schneider)

235.    Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein

236.    The transfer of the Molt Property to Kathleen Burrows was a fraudulent transfer.

237.    After the fraudulent transfer, Burrows sold the property.

238.    In February, 2015, Burrows transferred $305,045.50 to an account held by Michelle Schneider at US Bank. Upon information and belief, some or all of this money constituted proceeds from the Molt Property.

239.    Thus, Michelle Schneider is a subsequent transferee of a fraudulent transfer.

240.    Michelle Schneider is not a good faith subsequent transferee. Instead, Michelle is complicit in Debtor's scheme to conceal Debtor's assets from creditors, and the entire Molt Property transaction was a scheme by Debtor and Michelle

Schneider to monetize the Molt Property and attempt to hide the proceeds from Debtor's creditors.

241. Pursuant to 11 U.S.C. § 550(a) and MONT. CODE. ANN. § 31-2-340(2), Trustee is entitled to judgment against Michelle Schneider for the $305,045.50.

## COUNT XVI – FRAUDULENT AND PREFERETIAL TRANSFERS
### (Michelle Schneider)

242. Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

243. Beginning in 2012, Debtor began depositing his personal funds into the accounts of his wife, Michelle Schneider, in order to hide such funds from creditors.

244. For example, in December of 2012, Debtor received a check from NRNS for services he performed as an owner and employee of NRNS. However, Debtor deposited that check in the account of Michelle Schneider. Debtor has done the same with other checks which were his assets, including for sales of equipment from the Whispering Winds Ranch.

245. Michelle Schneider is an insider of Debtor.

246. Debtor did not receive any consideration, much less reasonably equivalent value, for the deposits to Michelle Schneider's account.

247. At the time of the transfer of the transfers to Michelle Schneider, Debtor's remaining assets were unreasonably small and he should have reasonably believed that he would be unable to pay his debts as they came due.

248. At the time of the transfers to Michelle Schneider:

    (a)    Debtor was insolvent or became insolvent as a result of the transfers;

    (b)    Debtor was engaged or about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to such business or transaction; and/or

    (c)    Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

249. The transfers to Michelle Schneider were made with the intent to hinder, delay, or defraud creditors of Debtor.

250. Michelle Schneider was not a good faith transferee. Rather, she was complicit in Debtor's scheme to conceal Debtor's assets from creditors.

251. Joseph V. Womack, as Chapter 7 trustee for Debtor, has all of the rights of creditors to bring avoidance claims under applicable state law.

252. Pursuant to 11 U.S.C. § 544(b), the transfers to Michelle Schneider were fraudulent transfers under WYO. STAT. ANN. §§ 34-14-205 and 206 and/or MONT. CODE. ANN. §§ 31-2-333 and 334,.

253. Further, certain of the transfers to Michelle Schneider constitute fraudulent transfers under 11 U.S.C. § 548.

254. Finally, certain transfers to Michelle Schneider constitute preference payments made to insiders pursuant to 11 U.S.C. § 547.

255. The Trustee is therefore entitled to an order that the distributions to Michelle Schneider may be avoided pursuant to 11 U.S.C. § 550.

256. Pursuant to 11 U.S.C. § 551, the transfers to Michelle Schneider avoided under §§ 544(b), 547 and 548 are preserved for the benefit of the Bankruptcy Estate.

257. In the alternative to avoidance of the fraudulent transfer, pursuant to 11 U.S.C. § 550(a) and Wyo. Stat. Ann. § 34-14-209(b) or Mont. Code. Ann. § 31-2-340(2), Trustee is entitled to a money judgment against Michelle Schneider for the total value of the transfers from Debtor.

## COUNT XVII – PRELIMINARY INJUNCTION
### (All Defendants)

258. Plaintiff hereby restates each and every paragraph in this Complaint, as if specifically stated herein.

259. The Trustee requires preliminary injunctive relief to maintain the status quo and prevent any further transfer or dissipation of assts.

260. The Trustee has alleged numerous causes of action against the Defendants, and as indicated in this Complaint, the Trustee has shown a probable right of recovery and likelihood of success on the merits. Trustee and the bankruptcy estate will suffer imminent, irreparable harm without Court intervention, and there is no adequate remedy at law.

261. Debtor, individually and by and through various agents and entities, has continued to perpetrate his fraudulent scheme and by all indications intends to continue to do so. As a direct and proximate result of the Defendants' wrongful

actions as alleged in this petition, the Trustee and bankruptcy estate will suffer imminent injury for which no remedy at law exists without the protection of injunctive relief against such continuing wrongful acts.

262. The only adequate, effective, and complete relief to the Trustee and bankruptcy estate is to restrain the Defendants from further engaging in certain proscribed activities, as set forth below. Pursuant to FED. R. CIV. P. 65(a) and F. R. BANKR. P. 7065, and in order to preserve the status quo during the pendency of this action, the Trustee seeks, upon hearing, a preliminary injunction ordering and immediately restraining Defendants, including the Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them from transferring, concealing, encumbering or otherwise dissipating any of the assets currently held by Debtor, Michelle Schneider, the Children's Trusts, MedPort, Schneider Management, the John Trust, the Michelle Trust, and/or Schneider LP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

1. An order of this Court substantively consolidating into Debtor's estate Schneider LP, Schneider Management, and MedPort, *nunc pro tunc* to the date of Debtor's bankruptcy filing, as well as deeming any and all property of those entities the property of the bankruptcy estate and permitting the Trustee to pursue all claims and entitlements of said entities on behalf of the estate;

2. An order of this Court that Schneider LP, Schneider Management, MedPort, and BSC are the alter egos of the Debtor, and that the corporate shields

as to those entities should be pierced in reverse, as well as deeming any and all property of those entities the property of the bankruptcy estate and permitting the Trustee to pursue all claims and entitlements of said entities on behalf of the estate;

3.     An order of this Court that the transfer of the Whispering Winds Ranch to the Children's Trusts can be set aside and voided, or, in the alternative, a declaration that the transfer was fraudulent and an award of a money judgment against Michelle Schneider and the Children's Trusts for the value of the Ranch;

4.     An order of this Court that the 2012 loan from Schneider LP to MedPort was fraudulent, and an award of a money judgment against MedPort in the amount of any funds so transferred;

5.     An order of this Court that MedPort's mortgage on the Whispering Winds Ranch and the Judgment Lien held by the Children's Trusts can be set aside and voided, or, in the alternative, an order transferring the mortgage and Judgment Lien to the Trustee;

6.     An order of this Court that the distributions to Michelle Schneider from Schneider LP were fraudulent and preferential, and an order for the return of such distributions or an award of a money judgment against Michelle Schneider in the amount of said distributions;

7.     An order of this Court that the payments made for the benefit of Michelle Schneider for the purposes of satisfying her portion of the Biles settlement were fraudulent transfers of estate property, and an award of a money judgment against Michelle Schneider in the amount of said transfer;

8.    An award of damages against Michelle Schneider, Kathleen Burrows, Schneider Management, John Does 1-10, XYZ Corps. 1-10 and the Children's Trusts, in an amount to be proven at trial, for their acts of conversion, negligence, breaches of fiduciary duty, and conspiracy;

9.    A declaration that the John Trust is property of the bankruptcy estate;

10.    A declaration that the Children's Trusts are void as a matter of law because they were created for an illegal purpose and contrary to public policy and declaring all property of the Children's Trusts to be property of the estate;

11.    A declaration that all furnishing and household goods removed from the Debtor's Billings residence and Whispering Winds Ranch are property of the estate, requiring Debtor and Michelle Schneider to account for all such property, and requiring Debtor and Michelle Schneider to turn over all such property to Trustee;

12.    Money damages against Michelle Schneider, as a bad faith, subsequent transferee of funds received from Kathleen Burrows as a result of the sale of the Molt Property;

13.    An order of this Court that the deposits of Debtor's funds in Michelle Schneider's bank account were fraudulent and preferential, and an order for the return of such transfers or an award of a money judgment against Michelle Schneider in the amount of said transfers;

14.    An order granting a preliminary injunction immediately restraining Defendants, including the Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active

concert or participation with them from transferring, concealing, encumbering or otherwise dissipating any of the assets currently held by Debtor, Michelle Schneider, the Children's Trusts, MedPort, Schneider Management, the John Trust, the Michelle Trust or Schneider LP.

15.     An award of prejudgment interest;

16.     An award of attorneys' fees and costs, to the extent allowed by applicable rule or law; and

17.     Such other and further relief that the Court deems proper.

DATED this 22nd day of May, 2015.

GOETZ, BALDWIN & GEDDES, P.C.


By: */s/Trent M. Gardner*
Trent M. Gardner/Jeffrey J. Tierney
Attorneys for Trustee Joseph V. Womack